UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOANNA ROSHANAIE,<br><br>　　　　　Plaintiff,<br><br>　　　　v.<br><br>JO ANNE B. BARNHART,<br>Commissioner of the Social<br>Security Administration,<br><br>　　　　　Defendant. | No. CV 04-8454 PJW<br><br>MEMORANDUM OPINION AND ORDER |

## I.
## INTRODUCTION

Plaintiff brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking reversal of the decision by Defendant Social Security Administration ("Agency") denying Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits. Alternatively, she asks the Court to remand the case to the Agency for further proceedings. After reviewing the record and for the reasons discussed below, the Agency's decision is AFFIRMED and the case is DISMISSED.

## II.

## BACKGROUND

Plaintiff was born on May 20, 1961, and was 42 years old at the time of the administrative hearing. (AR 56, 361.) She has a GED and one year of college. (AR 83.) Her past relevant work was as a receptionist. (AR 78.)

Plaintiff filed protectively for SSI and DIB on or about May 1, 2001, alleging disability since January 10, 2001.[1] (AR 56, 59.) The causes of her alleged disability were mental problems, Lupus, joint pain, and headaches. (AR 36.) After the Agency denied Plaintiff's disability claim, she timely requested a hearing before an administrative law judge ("ALJ"). (AR 30-33.)

A hearing was held on September 22, 2003. (AR 355-77.) Plaintiff appeared with counsel and testified. (AR 357, 360-373.) A vocational expert also testified. (AR 373-75.)

Plaintiff testified that she suffered from a combination of mental and physical problems, and stated that she was receiving treatment for Lupus. (AR 364-65.) She added that she had had surgery to remove a brain tumor in 1998, and that she considered her worst health problems to be her Lupus and her memory-deficits since the surgery. (AR 368-71.) She also complained of chronic fatigue, and stated that the Lupus caused her joint pain and heightened vulnerability to viruses and infections, including rashes on her face and body. (*See* AR 369, 372.) Additionally, Plaintiff claimed to suffer symptoms of depression, confusion, irritability, and paranoia.

---

[1] Plaintiff had filed an earlier application for DIB, but it was denied at the first level on March 30, 1999. (*See* AR 72.) Plaintiff evidently did not appeal that denial of benefits.

1 (AR 370, 372.)  She explained that she could not return to her
2 previous work as a receptionist because she had become forgetful and,
3 as a result, would become "overwhelmed" with the work and suffer from
4 panic attacks.  (AR 363.)

5     Plaintiff confirmed that she had not worked since her alleged
6 onset date, and added that her income consisted of general relief.
7 (AR 361-63, 371.)  She stated that she lived with a relative.  (AR
8 360, 363.)  She explained that, during the course of a typical day,
9 she would stay at home and "sit on the sofa, and just watch TV and
10 that's it."  (AR 365.)  She testified that her relatives did all the
11 cooking, cleaning, and shopping, and that they washed her clothes for
12 her.  (AR 366-67.)  Plaintiff added that she did not smoke or drink,
13 and testified that--although she owned a car--she did not drive it.
14 (AR 367.)  She stated that her son had driven her to the hearing.  (AR
15 370.)

16     The ALJ next heard the testimony of a vocational expert.  (*See* AR
17 373-75.)  The vocational expert described Plaintiff's previous work as
18 sedentary and semi-skilled.  (AR 373.)  The ALJ then posed the first
19 of three hypothetical questions to her:

20     [Assume] an individual [the] same age, and the same work
21     background, and education as [Plaintiff] has.  In [the first
22     hypothetical question] we have a person who is only limited
23     in that she can lift no more than what Social Security
24     describes as light.  She can stand or walk six hours of an
25     eight hour period, and sit six, and lift ten pounds
26     frequently, and twenty occasionally.  She could occasionally
27     but not frequently climb ramps, ladders, scaffolds, balance,
28

1      crouch, crawl, stoop, and kneel.  She could actually
2      frequently climb stairs or ramps, it's the scaffolds and the
3      ladders that she'd have a problem with.
4 (AR 373.)  The vocational expert opined that this first hypothetical
5 person could perform Plaintiff's prior work as a receptionist, and
6 added that her opinion would not change, even if this hypothetical
7 person "could only occasionally climb at all, kneel, crouch, crawl, or
8 stoop."  (*See* AR 374.)

9     The ALJ then posed a second hypothetical question based on a
10 person with all of the limitations set forth in the first hypothetical
11 question, plus a mental impairment resulting in a "moderate limitation
12 with respect to understanding and following detailed instructions" but
13 leaving intact her ability to "understand and follow simple
14 instructions."  (*See* AR 374.)  The vocational expert testified that,
15 in her opinion, this hypothetical person could not perform Plaintiff's
16 prior work as a receptionist, but added that she could perform light,
17 unskilled work as a plastic toy assembler.  (AR 374-75.)

18     The ALJ concluded his examination of the vocational expert with a
19 third hypothetical question.  Once more, he asked the expert to assume
20 all of the limitations set forth in the first question, plus the
21 mental limitations described in the second question, but:

22      [Assume those mental limitations are] in the high-moderate
23      to severe range.  She would make frequent mistakes in even
24      the interpretation of simple instructions.  Her anxiety
25      tolerance would be greatly decreased causing her to have
26      panic attacks, rage, outbursts in an ordinary work setting
27      with very little in the way of a stimulus.  She would be
28

1       exhausted after short periods of time and would have very
2       severe difficulties with her short-term or long-term memory.
3  (AR 375.)  The vocational expert opined that this third hypothetical
4  person could neither perform Plaintiff's prior work as a receptionist,
5  nor any work.  (*See* AR 375.)  The ALJ then adjourned the hearing.  (AR
6  375-76.)

7       On October 30, 2003, the ALJ issued his decision analyzing
8  Plaintiff's claims under the Agency's five-step sequential evaluation
9  process.  (AR 13-18.)  After noting that Plaintiff had filed a
10 previous application for DIB, the ALJ made the step-one finding that
11 Plaintiff had not engaged in any substantial gainful activity since
12 her alleged onset date.  (AR 13-14.)  Accordingly, the ALJ proceeded
13 to the second step.

14      At step two, the ALJ found that Plaintiff suffered from several
15 unspecified impairments that were "severe" within the meaning of the
16 regulations.  (*See* AR 16.)  At step three, however, the ALJ concluded
17 that Plaintiff's impairments were "not severe enough to meet or
18 medically equal" a Listing.  (*See* AR 16.)

19      Accordingly, the ALJ assessed Plaintiff's residual functional
20 capacity in light of the medical evidence:

21      [Plaintiff can] lift 20 pounds occasionally and 10 pounds
22      frequently; walk/stand for 6 hours out of an 8-hour workday;
23      sit for 6 hours out of an 8-hour workday; limitations with
24      frequent climbing, kneeling, crawling, crouching, and
25      stooping; mild difficulties in maintaining social
26      functioning; and mild difficulties in maintaining
27      concentration, persistence, or pace.

28

5

(*See* AR 16.)  On this view of Plaintiff's residual functional capacity, the ALJ adopted the vocational expert's testimony that she could perform her prior work as a receptionist.  (*See* AR 16-17.) Accordingly, the ALJ made the step-four determination that Plaintiff was not disabled.  (*See* AR 17-18.)

Plaintiff timely requested review of the ALJ's decision.  (AR 8.) The Appeals Council denied review on August 4, 2004, however, and the decision of the ALJ became the final decision of the Agency.  (AR 6-7.)  Plaintiff then filed her Complaint in this Court.

### III.
### STANDARD OF REVIEW

"Disability" under the applicable statute is defined as the inability to perform any substantial gainful activity because of "any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  The Court may overturn the ALJ's decision that a claimant is not disabled only if the decision is not supported by substantial evidence or is based on legal error.  *See Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  Substantial evidence "'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  It is "more than a mere scintilla but less than a preponderance," *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998), and "does not mean a large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

"The Court must uphold the ALJ's conclusion even if the evidence in the record is susceptible to more than one rational interpretation." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). Indeed, if the record evidence can reasonably support either affirming or reversing the Agency's decision, this Court must not substitute its judgment for that of the ALJ. *See Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the ALJ committed error but the error was harmless, reversal is not required. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2003)(applying the harmless error standard).

IV.

DISCUSSION

Plaintiff claims that the ALJ erred by ignoring the opinion of an Agency reviewing psychiatrist who--upon reviewing the record in support of Plaintiff's *first* application for DIB--had opined that her mental condition resulted in more profound limitations than the ALJ reviewing her *current* application ultimately found. (*See* Joint Stip. at 4-6.) This claim is meritless.

The report to which Plaintiff alludes was completed by Alan R. Schrift, an Agency physician who reviewed the evidence of Plaintiff's infirmities on March 12, 1999, and whose opinion was part of the record of her *first* application for DIB. (*See* AR 196-204.) Based on his review of the then-current medical record, Dr. Schrift found that Plaintiff had a memory impairment which resulted in moderate "restriction of activities of daily living," moderate "difficulties in maintaining social functioning," and moderate "deficiencies of concentration, persistence or pace." (*See* AR 98, 203.) He further opined that Plaintiff would have episodes of deterioration or

decompensation once or twice monthly, but concluded that, such as they were, these limitations did not meet or equal any Listing-level impairment.  (*See* AR 203.)

Plaintiff complains that the ALJ did not take this report into account.  (*See* Joint Stip. at 4.)  Indeed, although the ALJ did not mention Dr. Schrift's report in his decision, that report was part of the record, which included the medical evidence from Plaintiff's first application for DIB.  (*See* AR 130-234.)  In the decision, the ALJ stated that he had reviewed "all of the evidence of record."  (AR 14.)

It is true that the ALJ may not simply ignore medical opinions, including those rendered by Agency physicians.  The regulations explicitly so provide:

> Administrative law judges are not bound by any findings made by State agency medical or psychological consultants, or other program physicians or psychologists.  However, State agency medical and psychological consultants and other program physicians and psychologists are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation.  Therefore, administrative law judges must consider findings of State agency medical and psychological consultants or other program physicians or psychologists as opinion evidence, except for the ultimate determination about whether you are disabled.

*See* 20 C.F.R. § 416.927(f)(2)(i); *see also* 20 C.F.R. § 404.1527(f)(2)(i)(same).  In Plaintiff's case, because the ALJ did not specifically mention or cite Dr. Schrift's report, it is unclear whether he rejected it, or simply did not consider it persuasive. Under either scenario, the ALJ's failure to mention Dr. Schrift's

opinion does not require reversal in this case.  "[I]n interpreting the evidence and developing the record, the ALJ does not need to discuss every piece of evidence."  *See Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003)(citations and internal quotation marks omitted).  On this score, it is worth noting that the weight that the opinions of Agency consulting physicians must be given occupies the very lowest position on the hierarchy of medical opinion evidence:

> In disability cases, it is well settled that more weight is given to a treating physician's opinion than to the opinion of a nontreating physician because a treating physician is employed to cure and has a greater opportunity to know and observe the patient as an individual.  Similarly, greater weight is accorded to the opinion of an examining physician than a non-examining physician.  In cases where the opinion of a non-treating, non-examining physician contradicts the opinion of the treating physician, the opinion of the treating physician may be rejected only if the ALJ gives specific, legitimate reasons for doing so that are based on substantial evidence in the record.

*See Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997)(citations and internal quotation marks omitted).

Instead of relying on the outdated opinion of a reviewing physician, the ALJ properly relied on much more *current* opinions from several physicians, including that of a psychiatrist who had actually examined Plaintiff.  Dr. Khang Nguyen, the Agency psychiatrist who examined Plaintiff on August 2, 2002, to determine the extent of her limitations under the *current* application, opined that she had *no*

9

severe mental limitations, and specifically found that her "cooperation with the cognitive testing appears to be suboptimal." (*See* AR 297-300.)  Two weeks later, Dr. Robert T. Farrell, the Agency psychiatrist assigned to review the record on *this* application, reached the same ultimate conclusion.[2] (*See* AR 311-25.)  Where the ALJ rejects a non-examining, non-treating physician's opinion in reliance upon other, more competent evidence--as happened here--the usual rule that the ALJ need not discuss all evidence presented to him applies.  *See Wolff*, 341 F.3d at 1012.

Indeed, Dr. Schrift's opinion was even *less* probative than the usual consulting physician's opinion, because it was rendered nearly three years before the onset date alleged in Plaintiff's current application.  (*See* AR 196-204.)  In this situation, the ALJ would have been within his rights to discount or even disregard this evidence in its entirety.  *See Bright-Jacobs v. Barnhart*, 386 F.Supp. 2d 1295, 1301 n.2 (N.D. Ga. 2004)(rejecting as "irrelevant" medical records that "predate the disability onset date"); *see also Jones v. Massanari*, No. 01-C-0024-C, 2001 WL 34382025, at *11 (W.D. Wis. Oct. 18, 2001) (finding that evidence which "pre-date[d] plaintiff's claimed onset of disability by approximately two years" would not have "any difference to the outcome" and could be disregarded by the ALJ);

---

[2] Although Plaintiff's treating physician, Gus Dixon, M.D., submitted several letters on her behalf opining that her mental problems were totally disabling, the ALJ determined that this evidence was "conclusory" and supported by "little to no treatment notes." (*See* AR 15).  These were proper reasons to discount or even reject this evidence.  *See Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995) (noting that the ALJ need not accept a treating physician's opinion that is brief, conclusory, and unsubstantiated by objective medical evidence).

*Abrego v. Commissioner of Social Security Admin.*, No. CIV. 99-6173-JO, 2000 WL 682671, at *5 (D. Or. May 25, 2000)(holding that the ALJ did not err in discounting a treating physician's opinion which predated the alleged onset date by eight months); *Dobson v. Chater*, 927 F.Supp. 1265, 1273 (D. Neb. 1996)(observing that evidence pre-dating the alleged onset date was "not directly relevant to the [later] time period under consideration").

Finally, the Court concludes that--even if the ALJ should have mentioned the opinion that the Agency's consulting physician rendered on Plaintiff's previous application for benefits--any error was harmless.  *See Batson*, 359 F.3d at 1197.  Had the ALJ addressed Dr. Schrift's report, he would have been forced to reject its conclusions as inconsistent with the weight of the evidence.  Aside from the fact that Dr. Shrift's opinion contained in a check-the-box report was inconsistent with the medical evidence offered by Drs. Farrell and Nguyen, his assessment of the overall effect of Plaintiff's subjective symptom complaints simply cannot be reconciled with the ALJ's finding that Plaintiff's testimony was "not very credible" (AR 16)--a factual determination that Plaintiff does not challenge and which the Court must accept.[3]  Thus, although it is true that the ALJ must "explain why significant probative evidence has been rejected," medical

---

[3] "Credibility determinations are the province of the ALJ." *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989).  For that reason, this Court will not second-guess an unchallenged credibility finding. *See Solomon v. Secretary of Health and Human Services*, No. 91-CV-77171 DT, 1992 WL 478586, at *2 (E.D. Mich. Aug. 13, 1992)("The Plaintiff has not challenged the ALJ's determination of her credibility, and the Court accepts it as accurate.").

evidence that is controverted by other evidence in the record is not considered significant or probative. *See Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984).

In the end, the ALJ's failure to mention the report of Dr. Schrift in his decision was not reversible error. Indeed, a review of the record reveals substantial medical evidence supporting the ALJ's conclusion that Plaintiff's cognitive defects did not translate into more profound functional limitations. The contrary conclusion from a non-treating, non-examining, non-testifying physician who had reviewed the medical record nearly three years before the onset date alleged in Plaintiff's *current* application would not have outweighed this other, more current evidence from several other physicians--including one who had actually examined Plaintiff. For that reason, the Court rejects Plaintiff's claim that the ALJ gave unduly short shrift to the opinion of an Agency consulting physician, Dr. Schrift.

V.

CONCLUSION

For the reasons set forth above, this Court finds that the Agency's findings are supported by substantial evidence and are free from material legal error. Therefore, the Court AFFIRMS the decision of the Agency and enters summary judgment in favor of the Agency and against Plaintiff.

IT IS SO ORDERED.

DATED:   March   8  , 2006.

       /s/
PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-Soc Sec\ROSHANAIE\Memo Opinion.wpd